**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREG MANNING, et al., | Civil Action No.: 12-4466 (JLL) |
| Plaintiffs, | |
| v. | **OPINION** |
| MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. et al., | |
| Defendants. | |

This matter comes before the Court by way of the December 31, 2012 Report and Recommendation by the Magistrate Judge Michael Hammer and the objections submitted thereto by Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc., Knight Capital Americas, L.P., UBS Securities, L.L.C., E*TRADE Capital Marks, L.L.C., National Financial Services, L.L.C. (collectively "Defendants" or "Merrill Lynch"). Upon consideration of the objections submitted by Defendants, the Court ordered Plaintiffs to submit a response, which they did on March 4, 2013 (CM/ECF No. 44). On March 8, 2013, Defendants filed a letter in response to Plaintiffs' submission. (CM/ECF No. 45).[1] For the reasons set forth below, upon <u>de novo</u> consideration of the issues objected to by

---

[1] Defendants filed the March 8, 2013, letter without seeking permission from the Court. However, the letter addresses a case decided by the Supreme Court after the filing of Defendants' Objection on which Plaintiffs rely. Accordingly, the Court will consider the letter, as Plaintiffs did not object to same.

Defendants, the Court DENIES Plaintiffs' motion to remand this matter to the Superior Court of New Jersey.

Plaintiffs allege that Defendants engaged in illegal and manipulative "naked short selling" of Escala Group, Inc. ("Escala Group"), of which they own shares. "'Short selling' is the practice of borrowing shares of stock, selling them and seeking to repurchase those shares at a lower price, returning the lower-priced shares to the lender and keeping the difference as profit." Fairfax Financial Holdings, Ltd. v. S.A.C. Capital Management, LLC, Civ. No. 06-4197, 2007 WL 1456204, at *1 (D.N.J. May 15, 2007) (Cavanaugh, J.). The parties do not dispute that "short selling" is a legal practice. As explained by Judge Hammer, however, "'naked short-selling' occurs when traders sell shares they do not own or borrow, or ever intend to own, and never deliver the 'borrowed' securities that they sell.'" (Report and Recommendation, 2-3) (citing Avenius v. Banc of Am. Sec. LLC, Civ. No. 06-4458, 2006 WL 4008711 at *1 (N.D. Cal. Dec. 30, 2006); Capece v. DTCC, 2005 U.S. Dist. LEXIS 42039, at *1 (S.D. Fla. Oct. 11, 2005)). As noted above, that is the practice with which Plaintiffs premise their Amended Complaint.

In other words, Plaintiffs allege that Defendants sold shares they did not own or borrow, or ever intend to own, which created and circulated unauthorized or counterfeit shares of Escala Group, diluting and artificially depressing their value. During May and December of 2006, Defendants allegedly entered millions of proprietary and customer short sale transactions without having reasonable grounds to believe that the securities could be borrowed and be available for delivery. (Compl. ¶ 4).

Plaintiffs commenced this action with the filing of a Complaint on May 8, 2012, in the Superior Court of New Jersey, Law Division, Morris County. (CM/ECF No. 1). On June 7, 2012, Plaintiffs filed an Amended Complaint in the Superior Court of New Jersey. (CM/ECF No. 1). Defendants removed the action to this Court on July 17, 2012. At that time, as now, Defendants contend that removal is proper on two separate grounds: (1) the Court is vested with exclusive jurisdiction under Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa ("Exchange Act" or the "Act"); and (2) the Court is vested with original jurisdiction because Plaintiffs' claims raise, and arise under, federal law. Plaintiffs filed a motion to remand and for an award of attorneys' fees on August 16, 2012. (CM/ECF No. 11).

## LEGAL STANDARD

When the magistrate judge addresses motions that are considered "dispositive," such as to grant or deny a motion to dismiss, a magistrate judge will submit a Report and Recommendation to the district court. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72; L. Civ. R. 72.1(a)(2). The district court may then "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [magistrate judge]. The judge may also receive further evidence or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1)(C); see also L. Civ. R. 72.1(c)(2). Unlike an Opinion and Order issued by a magistrate judge, a Report and Recommendation does not have force of law unless and until the district court enters an order accepting or rejecting it. United Steelworkers of Am. v. N. J. Zinc Co., Inc., 828 F.2d 1001, 1005 (3d Cir. 1987).

The standard of review of a magistrate judge's determination depends upon whether the motion is dispositive or non-dispositive. With respect to dispositive motions, the district court must make a de novo determination of those portions of the magistrate judge's Report to which a litigant has filed an objection. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); L. Civ. R. 72.1(c)(2); see also State Farm Indem. v. Fornaro, 227 F. Supp. 2d 229, 231 (D.N.J. 2002); Zinberg v. Washington Bancorp, Inc., 138 F.R.D. 397, 401 (D.N.J. 1990) (concluding that the court makes a de novo review of the parts of the report to which the parties object).

As previously noted, Defendants object to the Report and Recommendation and argue that it misconstrues the following: (1) the scope of exclusive jurisdiction under Section 27 of the Exchange Act, 15 U.S.C. § 78aa; and (2) Defendants' argument regarding federal question jurisdiction and the applicability of the Supreme Court's decision in Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313-14 (2005). Accordingly, the Court will determine de novo whether remand is appropriate in light of Defendants' objections. See In re U.S. Healthcare, 159 F.3d 142, 146 (3d Cir. 1998).

The party asserting federal jurisdiction by way of removal bears the burden of establishing that federal subject matter jurisdiction exists. Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004). A defendant may remove to federal court an action brought in state court if the plaintiff could have filed the complaint within the original jurisdiction of the federal court. 28 U.S.C. § 1441. Courts should construe Section 1441 strictly and resolve all doubts in favor of remand. Samuel-Bassett, 357 F.3d at 396. The existence of federal jurisdiction must be decided on the face of the

complaint.   Merrell Dow Pharms. v. Thompson, 478 U.S. 804, 808 (1986) ("[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well pleaded complaint') (quoting Franchise Tax Bd. of State of Cal. v. Contru. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 9-10 (1983)).

## DISCUSSION

Plaintiffs' Amended Complaint alleges that "Defendants substantially injured Plaintiffs while at the same time reaping enormous profits by knowingly and intentionally, creating, loaning and selling unauthorized, fictitious and counterfeit shares of Escala stock, through various unlawful schemes and devices and by engaging in the unlawful practice of naked short sales." (Compl. ¶ 1).  Specifically, the Amended Complaint asserts the following causes of action under state law: (1) violation of New Jersey RICO, N.J.S.A. 2C:41-1 et. seq. predicated on violations of the New Jersey Uniform Securities Law, N.J.S.A. 49:3-49 et seq., theft by taking in contravention of N.J.S.A. 2C:20-2 et seq., and theft by deception counter to N.J.S.A. 2C:20-4; (2) unjust enrichment; (3) unlawful interference with prospective economic advantage; (4) tortious interference with contractual relations; (5) unlawful interference with contractual relations; (6) third party beneficiary claims; (7) breach of covenant of good faith and fair dealing[2]; and (8) punitive and exemplary damages.

Notably, Plaintiffs do not dispute that the alleged unlawful conduct is predicated on a violation of Regulation SHO, 17 C.F.R. § 242.204, promulgated by the Securities and Exchange Commission ("SEC").  Indeed, the Amended Complaint also provides:

---

[2] For the sake of completeness, the Amended Complaint designates both the breach of the covenant of good faith and fair dealing, and the third party beneficiary cause of action as "Count Six."

> [t]here are certain Defendants who have been fined millions of dollars by
> the [SEC] and the Financial Industry Regulatory Authority ("FINRA") for
> their intentional and persistent violation of the rules and regulations
> governing their unlawful short selling activities.  These fines and
> sanctions, however, have not deterred these Defendants, which view them
> merely as "pocket change" and the "cost of doing business."

(Compl. ¶ 6).

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" Gunn v. Minton, 133 S.Ct. 1059, 1064 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994)). Generally, federal question jurisdiction may be invoked in two instances: (1) where plaintiffs plead a cause of action created by federal law; and (2) certain state-law claims that implicate significant federal issues.  Grable, 545 U.S. at 312.  Recently, the Supreme Court reiterated that the latter is "a 'special and small category' of cases." Gunn, 133 S.Ct. at 1064 (quoting Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006)).

As noted above, Defendants contend that removal is proper on two separate grounds: (1) the Court is vested with exclusive jurisdiction under Section 27 of the Exchange Act ; and (2) the Court is vested with original jurisdiction because Plaintiffs' claims raise, and arise under, federal law.  The Court will address each.

### 1. The scope of exclusive jurisdiction under Section 27 of the Exchange Act

As an initial matter, no party points to controlling authority on the issue of whether Section 27 of the Exchange Act provides exclusive federal jurisdiction under the specific circumstances raised in this case, namely, where state claims are predicated on a violation of the Exchange Act.  Defendants contend that "Plaintiffs' allegations that

Defendant violated Regulation SHO's locate requirement, which, with certain exceptions, compels short sellers to have reasonable grounds to believe that a stock can be borrowed before selling it short" brings those claims squarely within the purview of Section 27. (Defs.' Opp'n. 3).

Plaintiffs rely on <u>Fairfax</u>, to argue that the instant matter should be remanded. In that case, the defendants allegedly engaged in the practice of manipulative short selling, by conspiring to devastate the business and reputation of the plaintiff. Specifically, defendants allegedly disseminated corrupt and materially misleading equity research regarding plaintiff's business condition, defamed plaintiff, and harassed the plaintiff's agents and employees. 2007 WL 1456204, at * 1. The plaintiffs in that case filed a complaint in the Superior Court of New Jersey which asserted claims pursuant New Jersey's RICO and common law. The court remanded the case, holding, in relevant part, that "Section 27 does not grant . . . exclusive jurisdiction because [p]laintiffs' action is not an action brought to enforce the securities laws. Rather, Plaintiffs' allegations that Defendants violated provisions of the Exchange Act merely support Plaintiffs' state causes of action." 2007 WL 1456204, at * 5. Therefore, the court concluded that Section 28 saved plaintiffs' New Jersey RICO claims predicated on a violation of the Exchange Act. <u>Id.</u>[3]

Section 27 provides, in relevant part, as follows:

> The district courts of the United States . . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce

---

[3] The court reasoned that "Section 28 of the Act preserves state causes of action: 'the rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist in law or equity.'" <u>Id.</u> (quoting 15 U.S.C. § 78bb) (alterations omitted).

any liability or duty created by this chapter or the rules and regulations thereunder.

15 U.S.C. § 78aa.  "Section 27 of the Exchange Act confers exclusive jurisdiction upon the federal courts for suits brought to enforce the Act or rules and regulations promulgated thereunder."  <u>Matsushita Elec. Indus. Co. v. Epstein</u>, 516 U.S. 367, 370 (1996).  As the case at bar is premised upon and its resolution depends on the alleged violation of a regulation promulgated under the Act, this Court has jurisdiction.  <u>Saks v. Dietrick</u>, 663 F.3d 1065, 1068 (9th Cir.  2011); <u>Sparta Surgical Corp. v. NASD, Inc.</u>, 159 F.3d 1209, 1211-12 (9th Cir. 1998); <u>see</u> <u>D'Alessio v. NYSE, Inc.</u>, 258 F.3d 93, 101-02 (2d Cir. 2001).  In addition, the <u>Fairfax</u> decision is distinguishable here because, unlike <u>Fairfax</u>, this case is premised upon enforcement of the federal Exchange Act and corresponding rules and regulations.

### 2.  "Arising Under" Jurisdiction

Defendant argues that there is federal jurisdiction under 28 U.S.C. §§ 1331 and 1337 because Plaintiffs' causes of action depend upon the resolution of a federal issue, namely violation of the Exchange Act and federal regulations, and raise the substantial federal question of whether naked short sales in the National Clearance and Settlement System (the "National System") create "counterfeit" shares.  Thus, Defendants maintain that the Report and Recommendation misconstrues the applicability of the Supreme Court's decision in <u>Grable</u>, 545 U.S. at 313-14.

The doctrine of federal "arising under" jurisdiction "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the

experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." Grable, 545 U.S. at 312. The requisite inquiry to determine whether state law claims implicate sufficient federal issues is as follows: (1) does a state-law claim necessarily raise a stated federal issue; (2) is the federal issue actually disputed; (3) is the federal issue substantial; and (4) would entertaining the issue disturb the congressionally approved balance of federal and state judicial responsibilities. Id. at 314. Applying that test here, Plaintiffs' claims arise under federal law.

First, the federal issue is necessarily raised by Plaintiffs' claims. Indeed, those claims are predicated on Defendants' alleged naked short sales of Escala stock in violation of SEC Regulation SHO. To prevail on their various state law claims, therefore, Plaintiffs must show that the alleged naked short sales were illegal. As Defendants argue in their Opposition to Plaintiffs' motion to remand, "[i]f, as the SEC has concluded, naked short selling does not create counterfeit shares, Plaintiffs have no cognizable injury, and their claims must be dismissed." (Defs.' Opp'n. 30-31). It bears noting that Plaintiffs do not point to a New Jersey law or regulation which similarly prohibits the type of alleged conduct at issue here.

Second, the federal issue is disputed. Defendants argue that "Plaintiffs' claims in this case are impossible to adjudicate without determining whether Plaintiffs are correct that so-called 'naked' short selling creates 'counterfeit shares.' This is because Plaintiffs' only basis for damages is their claim that the alleged 'counterfeit shares' diluted the value of their 'legitimate' Escala shares." (Def.'s Obj. 8). The viability of Plaintiffs' claims turns on that issue and Plaintiffs seek damages incurred as a result of the dilution and artificially depressed value of their shares.

In addition, the federal issue is substantial.  <u>See</u> <u>Empire HealthChoice Assurance, Inc. v. McVeigh</u>, 574 U.S. 677, 700-01 (2006).  Resolution of Plaintiffs' claims depends on the disputed issue.  Determination as to whether the alleged naked short selling creates phantom shares would also impact subsequent lawsuits.  Further, the issue is important to the federal system as a whole.  Recently, in <u>Gunn v. Minton</u>, the Supreme Court considered whether a plaintiff's legal malpractice claim, which involved the viability of an experimental-use argument in an underlying patent case, arose under federal patent law.  Expounding on the substantiality component of the <u>Grable</u> inquiry, the Supreme Court wrote: "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will <i>always</i> be true when the state claim 'necessarily raises' a disputed federal issue, as <u>Grable</u> separately requires.  The substantiality inquiry under <u>Grable</u> looks instead to the importance of the issue to the federal system as a whole." 133 S.Ct. at 1066.  The Court in <u>Gunn</u> reasoned that the federal issue was not substantial because the federal patent question in that case was hypothetical "due to the backward-looking nature of a legal malpractice claim."  <u>Id.</u> at 1066-67.  Similarly, allowing state courts to resolve the case would not "undermine the development of a uniform body of patent law."  <u>Id.</u> (alterations and quotations omitted).

It is worth noting that the issuance of the Report and Recommendation in this matter preceded the <u>Gunn</u> and, accordingly, Judge Hammer did not have the benefit of that decision.  In this case, Defendants argue that "the existence of 'counterfeit shares' presents a substantial issue of federal law because it requires analysis of the regulations governing the federally sanctioned system for securities trading.  Indeed, if naked short selling did create 'counterfeit shares,' as Plaintiffs claim – and the SEC has denied—then

the entire federal system for short selling would be called into question." (Def.'s Obj. 9).

Plaintiff, on the other hand, draws a parallel between the current New Jersey RICO

claims and the attorney malpractice claim in <u>Gunn</u> to argue that the violation of

Reguation SHO constitutes a "case within a case." (Pls.' Resp. 9). Therefore, they

argue, "[a]pplying <u>Gunn</u> to the case at bar, there is an insufficient link in Plaintiff's state

RICO claims to the substantial federal issues of law. Simply because Defendants claim

that there are important issues to the federal system at stake does not make it true . . . ."

(Pls.' Resp. 10).

    In response, Defendants urge that Plaintiffs' theory threatens the uniform

administration of the federal securities scheme. "To win relief, Plaintiffs must prove

violations of Regulation SHO and other federal regulations. In the absence of federal

jurisdiction, such claims would be subject to state courts, not uniform federal

adjudication. Plaintiffs must also prevail on their 'counterfeit share' theory to show any

injury under their Complaint." (Defs.' Resp. 2). In addition, the theory of relief throws

into question the entire federal scheme for regulating short selling. <u>Id.</u> "Specifically, if

Plaintiffs prevail on this point, certain aspects of short selling explicitly permitted under

the federal regulations would be subject to state liability, raising clear problems for the

decisions made by federal regulators and the uniformity of the federal regulatory

scheme." <u>Id.</u>

    The Court finds the instant case distinguishable from the backward looking

malpractice "case within a case" at issue in <u>Gunn</u>. Rather, as Defendants argue, other

federal courts have found that the existence of "counterfeit shares" raises a substantial

federal issue. <u>Pet Quarters, Inc. v. Depository Trust & Clearing Corp.</u>, 545 F. Supp. 2d

845, 848-49 (E.D. Ark. 2008); Capace v. DTCC, Civ. No. 00-5404, 2005 WL 4050118, at *8 (S.D. Fla. Oct. 11, 2005).

Plaintiffs urge that relevant case law demonstrates that "cases removed to federal court have consistently been remanded where the predicate acts alleged under state RICO statutes include violations of the federal securities laws, such as the Exchange Act." (Pls.' Mot. 1, 9-11) (citing Fairfax, 2007 WL 1456204, at *5 (D.N.J. May 15, 2007); Meinders v. Fefco Sec., Inc., 865 F. Supp. 721, 723 (D. Colo. 1994); Horowitz v. Marlton Oncology, P.C., 116 F. Supp. 2d 551, 554-556 (D.N.J. 1999)). In the context of a previous motion to remand, this Court has previously interpreted the two District of New Jersey cases cited by Plaintiffs and explained that it declines to permit those decisions to "stand for the broad proposition that no federal interest, however important, can support federal jurisdiction if it is brought through the vehicle of state law." Ortiz v. University of Medicine & Dentistry of New Jersey, Civ. No. 08-2669, 2009 WL 2194782, at *4 (D.N.J. Mar. 18, 2009). In this case, the Court finds that the Amended Complaint sets forth a substantial question of federal law. Accordingly, the third prong of the Grable test is satisfied. 545 U.S. at 314.

Finally, entertaining the issue would not disturb the congressionally approved balance of federal and state judicial responsibilities. The instant matter primarily involves the issue of whether the complained of conduct is consistent with Defendants' obligations under the Exchange Act and regulations promulgated thereunder. See Friedlander v. Troutman, Sanders, Lockerman & Ashmore, 788 F.2d 1500, 1504 (11th Cir. 1986) (noting that "[t]he comprehensive scheme of statutes and regulations designed to police the securities industry is indicative of a strong federal interest."). In addition to

the fact that the Court determined above that it has exclusive jurisdiction under Section 27 of the Exchange Act, it is worth reiterating that the decisions of other courts indicate that Congress intended federal courts to have exclusive jurisdiction of violations of the Exchange Act and rules and regulations promulgated thereunder. Saks v. Dietrick, 663 F.3d 1065, 1068 (9th Cir. 2011); D'Alessio v. NYSE, Inc., 258 F.3d 93, 101-02 (2d Cir. 2001); Sparta Surgical Corp. v. NASD, Inc., 159 F.3d 1209, 1211-12 (9th Cir. 1998). This case does not involve a specific body of law in which New Jersey has a similar interest, such as regulating professionals within that jurisdiction. See Gunn, 2013 WL 610193, at * 10. Indeed, Plaintiffs do not point to a violation of New Jersey's securities law. In the case at bar, the essence of the Amended Complaint is that violation of Regulation SHO and other federal regulations gave rise to a number of state claims. Thus, this case is distinguishable from Fairfax which involved allegations of lawful short selling in conjunction with dissemination of corrupt and materially misleading equity research regarding the plaintiff's business condition, defamation, and harassment of plaintiff's agents and employees. Defendants argue that "so long as parties like Plaintiffs choose to assert their 'counterfeit shares' theory and other securities arguments in nominal state-law claims such as the ones presented here, federal courts would never have the opportunity to rule on them." (Defs.' Resp. 3). Accordingly, the instant matter would not disturb the balance between state and federal judicial responsibilities.


## CONCLUSION

Therefore, for the reasons stated above, upon de novo consideration of the portions of the Report and Recommendation to which there were objections, the Court

finds that there is federal jurisdiction over the instant matter.  Accordingly, the Court

DENIES Plaintiffs' motion to remand.


An appropriate Order accompanies this Opinion.

Dated: 3/18/13

Jose L. Linares
United States District Judge