**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3693
_____

GREG MANNING; CLAES ARNRUP; POSILJONEN
AB; POSILJONEN AS; SVEABORG HANDEL AS;
FLYGEXPO AB; LONDRINA HOLDING LIMITED,
Appellants

v.

MERRILL LYNCH PIERCE FENNER & SMITH, INC.;
KNIGHT CAPITAL AMERICAS, a/k/a Knight Equity
Markets L.P.; UBS SECURITIES LLC; E TRADE
CAPITAL MARKETS LLC; NATIONAL FINANCIAL
SERVICES LLC; CITADEL DERIVATIVES GROUP
LLC; JOHN DOES 1-10 (names being fictitious); ABC
COMPANIES (names being fictitious), jointly, severally
or in the alternative, individually
_____

On Appeal from the United States District Court
for the District of  New Jersey
District Court No. 2-12-cv-04466
District Judge: The Honorable Jose L. Linares

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 10, 2014

Before: SMITH, VANASKIE, and SLOVITER,
*Circuit Judges*

(Filed: November 10, 2014)

Neal H. Flaster, Esq.
Suite 230
30A Vreeland Road
P.O. Box 21
Florham Park, NJ 07932
        *Counsel for Appellants*

Brad M. Elias, Esq.
Andrew J. Frackman, Esq.
Abby F. Rudzin, Esq.
O'Melveny & Myers
7 Times Square
Time Square Tower, 33rd Floor
New York, NY 10036

Thomas R. Curtin, Esq.
Graham Curtin
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962
        *Counsel for Appellee Merrill Lynch Pierce Fenner*

2

*& Smith Inc.*

James H. Bilton, Esq.
David G. Cabrales, Esq.
Edwin R. DeYoung, Esq.
W. Scott Hastings, Esq.
Locke Lord
2200 Ross Avenue
Suite 2200
Dallas, TX 75201

Joseph N. Froehlich, Esq.
Locke Lord
Three World Financial Center
New York, NY 10281
    *Counsel for Appellee Knight Capital Americas,*
    *L.P.*

Andrew B. Clubok, Esq.
Beth A. Williams, Esq.
Kirkland & Ellis
655 15th Street, N.W.
Suite 1200
Washington, DC 20005

Brian M. English, I, Esq.
Tompkins, McGuire, Wachenfeld & Barry
100 Mulberry Street
Four Gateway, Suite 5

Newark, NJ 07102
        *Counsel for Appellee UBS Securities LLC*

Rebecca Brazzano, Esq.
Michael G. Shannon, Esq.
Thompson Hine
335 Madison Avenue
12th Floor
New York, NY 10017

Jennifer S. Roach, Esq.
Thompson Hine
3900 Key Center
127 Public Square
Cleveland, OH 44144
        *Counsel for Appellee National Financial Services,
        LLC.*

Melissa Steedle Bogad, Esq.
James S. Richter, Esq.
Winston & Strawn
The Legal Center
One Riverfront Plaza, 7th Floor
Newark, NJ 07102

Stephen J. Senderowitz, Esq.
Winston & Strawn
35 W. Wacker Drive
Chicago, IL 60601,

4

*Counsel for Appellee Citadel Derivatives Group, LLC*

Kurt A. Kappes, Esq.
Greenberg Traurig
Suite 1100
1201 K Street
Sacramento, CA 95814

David E. Sellinger, Esq.
Greenburg Traurig
200 Park Avenue
Florham Park, NJ 07932
*Counsel for Appellee E Trade Capital Markets*

————————————

OPINION

————————————

SMITH, *Circuit Judge.*

After the District Court denied Plaintiffs' motion to remand this case to New Jersey state court, we granted their petition for an interlocutory appeal. The issue before us is whether there is federal-question jurisdiction over Plaintiffs' state-law claims, which allege that defendants manipulated the price of a stock via abusive "naked" short sales. Short sales are subject to detailed

5

federal regulation under Regulation SHO.  New Jersey does not have an analogous provision.  However, the question of whether the naked short selling at issue in this case violates New Jersey law (including the state's general securities fraud provisions) need not be answered by reference to Regulation SHO.  Because the success of Plaintiffs' state-law causes of action does not "necessarily" depend upon the contents of federal law, this case does not "arise under" the laws of the United States.   The presence of an exclusive jurisdiction provision governing Regulation SHO does not change the analysis, as such provisions cannot independently generate jurisdiction.

We hold that there is no federal-question jurisdiction over this suit.  Accordingly, we will reverse the order denying remand, and direct the District Court to remand this case to the Superior Court of New Jersey.

## I.

Plaintiffs are shareholders in Escala Group, Inc. ("Escala").  Named Defendants are financial institutions that engage in equity trading.  Plaintiffs filed this lawsuit in the Superior Court of New Jersey alleging that Defendants participated in "naked" short selling of Escala stock, which "increased the pool of tradable shares by electronically manufacturing fictitious and unauthorized phantom shares."  (Am. Compl. ¶ 4.) Plaintiffs also refer to these shares as "counterfeit."  (Am.

Compl. ¶ 37.)  Plaintiffs claim that this alleged increase in Escala shares diluted their voting rights and caused their shares to decline in value.  The Amended Complaint pleads ten causes of action, with all claims asserted under New Jersey law.  These causes of action address: (i) claims under the New Jersey Racketeer Influenced and Corrupt Organizations ("RICO") Act based on predicate acts of New Jersey securities fraud and theft; and (ii) common law claims for unjust enrichment, interference with economic advantage and contractual relations, breach of contract, breach of the covenant of good faith and fair dealing, and negligence.

A normal (i.e., non-naked) short sale is usually accomplished in six steps:   (1) "[t]he short seller identifies securities she believes will drop in market price;" (2) arranges to "borrow[] these securities from a broker;"  (3) "sells the borrowed securities on the open market;"   (4)  waits some period of time hoping the securities decline in value; (5) "purchases replacement securities on the open market;" and (6) "returns them to the broker—thereby closing the short seller's position." *Elec. Trading Grp., LLC v. Banc of Am. Sec. LLC*, 588 F.3d 128, 132 (2d Cir. 2009).  "The short seller's profit (if any) is the difference between the market price at which she sold the borrowed securities and the market price at which she purchased the replacement securities, less [transaction costs]."   *Id*.  Usually a buyer takes delivery of the borrowed securities within three days

following the purchase.  Amendments to Regulation SHO, SEC Release No. 34-58773, 73 Fed Reg. 61706, 61707 n.8 (Oct. 14, 2008).

However, "[i]n a 'naked' short sale . . . the short seller does not borrow securities in time to make delivery to the buyer within the standard three-day settlement period.  As a result, the seller fails to deliver securities to the buyer when delivery is due (known as a 'fail' or 'fail to deliver').  Sellers sometimes intentionally fail to deliver securities as part of a scheme to manipulate the price of a security, or possibly to avoid borrowing costs associated with short sales, especially when the costs of borrowing stock are high."  *Id*. at 707-08.  Naked short selling is not per se illegal under federal law.  However, some naked short selling schemes may run afoul of federal antifraud laws, as well as Regulation SHO. 'Naked' Short Selling Antifraud Rule, SEC Release No. 34-58774, 73 Fed. Reg. 61666, 61667 (Oct. 14, 2008).

Regulation SHO, 17 C.F.R. § 242.200 *et seq*., was adopted in 2004 by the Securities and Exchange Commission ("SEC" or "Commission"), pursuant to its authority under the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a *et seq.  See* Short Sales, SEC Release No. 34-50103, 69 Fed. Reg. 48008 (July 28, 2004).  Among other restrictions, Regulation SHO imposes "locate" and "close out" requirements on broker-dealers in an attempt to minimize fails to deliver. Under the locate requirement, before executing a short

8

sale order, a broker-dealer must have "reasonable grounds" to believe that the security can be borrowed and delivered within three days.  17 C.F.R. § 242.203(b)(1).  If a fail to deliver has occurred and persists for thirteen days, under the "close out" requirement broker-dealers may be required to purchase and deliver securities "of like kind and quantity."  17 C.F.R. § 242.203(b)(3); *Elec. Trading Grp.*, 588 F.3d at 135-36.

Although Plaintiffs' causes of action are all brought under state law, the Amended Complaint repeatedly mentions the requirements of Regulation SHO, its background, and enforcement actions taken against some Defendants regarding Regulation SHO.  It also cites data maintained to assist broker-dealers in complying with Regulation SHO's close out requirement, and at times couches its allegations in language that appears borrowed from Regulation SHO.    Further, plaintiffs plead that "Defendants violated the trading rules and regulations requiring that they actually deliver shares . . . to settle short sale transactions." (Am. Compl. ¶ 33.)  There is no question that Plaintiffs assert in their Amended Complaint, both expressly and by implication, that Defendants repeatedly violated federal law.  Moreover, there is no New Jersey analogue to Regulation SHO.

Defendants removed the suit from the Superior Court of New Jersey to the United States District Court for the District of New Jersey, premised on the existence

9

of federal-question jurisdiction. Plaintiffs sought remand. On December 31, 2012, the Magistrate Judge issued a Report and Recommendation suggesting that Plaintiffs' motion to remand be granted: "because [Plaintiffs] may succeed on their New Jersey RICO claims . . . and state common law claims . . . without establishing liability under federal law, the Amended Complaint, on its face, does not raise necessarily a substantial issue of federal law." *Manning v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 12–4466, 2012 WL 7783142, at *4 (D.N.J. Dec. 31, 2012). The District Court disagreed in a March 20, 2013 opinion: "the case at bar is premised upon and its resolution depends on the alleged violation of a regulation promulgated under the [Exchange] Act." *Manning v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 12–4466, 2013 WL 1164838, at *4 (D.N.J. Mar. 20, 2013).

Noting "substantial ground for difference [of opinion] here, as evinced by the different outcome reached by this Court and [the] Magistrate Judge . . . in this case," on May 23, 2013, the District Court certified an interlocutory appeal to this Court, pursuant to 28 U.S.C. § 1292(b), to answer "the question of whether remand is appropriate in this case." *Manning v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 12–4466, 2013 WL 2285955, at *2 (D.N.J. May 23, 2013). On August 28, 2013, we granted Plaintiffs' petition to appeal.

## II.

Defendants removed this suit to federal court pursuant to 28 U.S.C. § 1441, asserting federal jurisdiction under 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 78aa. We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

"We exercise plenary review over [a] district court's order denying [a] motion for remand." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 665 (3d Cir. 2002).

## III.

The sole issue on appeal is whether there is federal-question jurisdiction over Plaintiffs' claims. "The removing party . . . carries a heavy burden of showing that at all stages of the litigation the case is properly before the federal court. Removal statutes are to be strictly construed, with all doubts to be resolved in favor of remand." *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009) (internal citations omitted). Defendants point to two principal statutory provisions they believe confer jurisdiction here: 28 U.S.C. § 1331 and 15 U.S.C. § 78aa ("§ 27" of the Exchange Act).[1] Section 1331, the "general federal-question statute," *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2030 n.2 (2014), gives

---

[1] 28 U.S.C. § 1441(a) authorizes removal of "any civil action" over which district courts "have original jurisdiction."

11

district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."    Section 27 gives district courts "exclusive jurisdiction . . . of all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder."

## A.

Section 1331 "is invoked by and large by plaintiffs pleading a cause of action created by federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *see also Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) ("Most directly, a case arises under federal law when federal law creates the cause of action asserted.") (citing *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)). However, causes of action under state law may nonetheless "arise under" federal law for purposes of § 1331 if the four-pronged *Grable* test is met. "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065 (applying *Grable*). Only a "slim category" of cases satisfy the *Grable* test. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).    Because we conclude that no federal issue has been necessarily raised here, we need

12

not decide whether the other three *Grable* requirements are met.

For a federal issue to be necessarily raised, "vindication of a right under state law [must] necessarily turn[] on some construction of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9 (1983). *Grable* presented one of the rare instances where a federal issue was necessarily raised. Grable sued under state law to quiet title. Five years prior to the suit, the Internal Revenue Service ("IRS") seized Grable's land to satisfy a tax deficiency. The IRS then sold that land to the defendant. Grable argued that the IRS did so without giving sufficient notice as required by federal law. Because "whether Grable was given notice within the meaning of the federal statute is . . . an *essential element* of its quiet title claim," the Supreme Court held that the issue of what notice was required under federal law was necessarily raised. *Grable*, 545 U.S. at 315 (emphasis added).

The "classic example," *id*. at 312, of this type of arising under jurisdiction similarly required a determination of federal law as an essential element of the plaintiff's state law claim. In *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), plaintiff sued under a state law which forbade the defendant from investing in illegal securities. The alleged source of illegality was that the federal bonds purchased by the

13

defendant were unconstitutional (on the theory that Congress did not have the power to issue them).  Because the "decision depend[ed] upon the determination of [the constitutional] issue," "which [was] directly drawn in question," federal jurisdiction was proper.  *Id*. at 245-46.

By contrast, Regulation SHO is not an element of any of Plaintiffs' claims. The claims, therefore, could be decided without reference to federal law.  Plaintiffs alleged a market manipulation scheme and sued exclusively under New Jersey law, including its common law.  The District Court, "noting that Plaintiffs do not point to a New Jersey law or regulation which similarly prohibits the type of alleged conduct at issue here," found that the claims were necessarily predicated on the violation of Regulation SHO.  *Manning*, 2013 WL 1164838, at *5.  We conclude it was improper for the District Court to foreclose the possibility that particular state causes of action could permit recovery solely under state law.  It is true that New Jersey's laws are not as robust as federal laws.  But we have previously held that even where "[t]here may be some basis to agree with defendants that [plaintiffs'] view of the state law is incorrect and will be so found[, i]t is . . . for the state court to make the determination as to the applicability of its state law."  *United Jersey Banks v. Parell*, 783 F.2d 360, 367 (3d Cir. 1986).

Indeed, even under federal law, a claim based on "abusive 'naked' short selling as part of a manipulative

scheme," can be maintained without a predicate violation of Regulation SHO, because such schemes are "always illegal under the general antifraud provisions of the federal securities laws . . . ." 'Naked' Short Selling Antifraud Rule, 73 Fed. Reg. at 61667.   Such manipulative schemes may "drive down a company's stock price" and "undermine the confidence of investors," which may, in turn, make investors more "reluctant to commit capital." *Id*. at 61670.   If naked short selling can result in a violation of federal general antifraud provisions independently of Regulation SHO, it is difficult to imagine why naked short selling cannot similarly result in a violation of state general antifraud provisions independently of Regulation SHO.  Moreover, the Supreme Court of New Jersey, exercising its common-law authority over New Jersey's general securities fraud provisions, has not shied away from deviating from federal law. *See Kaufman v. i-Stat Corp.*, 165 N.J. 94, 97 (2000) ("Even though the theory of fraud on the market has a place in the securities law of this nation, it is a stranger to New Jersey's securities laws.  It is also not consistent with the current requirements for a common-law action for fraud in New Jersey.").

As we read the Amended Complaint, no causes of action are predicated *at all* on a violation of Regulation SHO.  *Cf. Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1037 (9th Cir. 2003), *as amended* (Sept. 22, 2003) (no jurisdiction even where the complaint

15

"unnecessarily describes the alleged conduct of the defendants in terms that track almost verbatim the misdeeds proscribed by [federal law]"). For example, Plaintiffs do not plead a violation of Regulation SHO as a predicate violation for purposes of New Jersey RICO. Nor, for the reasons above, do we think Plaintiffs' causes of action necessarily need to be predicated on a violation of Regulation SHO for Plaintiffs to have a chance at recovering under state law.

But even if Plaintiffs' claims were *partially* predicated on federal law, federal law would still not be necessarily raised. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988) ("[A] claim supported by alternative theories in the complaint may not form the basis for [federal] jurisdiction unless [federal] law is essential to each.").[2] Where "[p]laintiffs' state [law] RICO claims allege both federal and state predicate acts," no federal question is necessarily raised because a Plaintiff could "prevail upon their New Jersey RICO claims or any of their other state-law claims

---

[2] Although *Christianson* concerned 28 U.S.C. § 1338 (dealing with actions "arising under" the patent laws) rather than § 1331, the Supreme Court noted the "identical language" in the two provisions and applied the "same test" to both. 486 U.S. at 808. *See also Gunn*, 133 S. Ct. at 1064-65 (citing *Christianson* and applying the *Grable* § 1331 analysis to § 1338).

16

without any need to prove or establish a violation of federal law." *Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC*, No. 06-4197, 2007 WL 1456204, at *2-3 (D.N.J. May 15, 2007) (applying *Christianson* to RICO claims premised on manipulative short selling).

Defendants also assert jurisdiction under § 1331 on the basis of a Frequently Asked Questions ("FAQ") page on the SEC's website.  The website is clear from the outset that the FAQ responses are "not rules, regulations, or statements of the [SEC]," nor has the Commission approved them.[3]  This website, which we are told refutes Plaintiffs' theory of damages, says that naked short selling does not create "counterfeit shares"—a term Plaintiffs employ liberally in the Amended Complaint. But the phrase "counterfeit shares" does not appear a single time anywhere in the United States Code or the Code of Federal Regulations.  Defendants simply cannot carry their burden of establishing jurisdiction based on a "disputed issue of federal . . . law," *Grable*, 545 U.S. at 310, without identifying a particular source of federal law for the judiciary to interpret.

---

[3]  Division of Market Regulation:  Responses to Frequently Asked Questions Concerning Regulation SHO, http://www.sec.gov/divisions/marketreg/mrfaqregsho1204.htm (last visited October 24, 2014).

17

Even if Plaintiffs' theories are factually contradicted by actual rules with the force of law, as the Eighth Circuit thought similar theories were in *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 781 (8th Cir. 2009) (referencing National Securities Clearance Corporation rules), Defendants would at best be entitled to a preemption defense. "Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, (1987).[4]

---

[4] The Eighth Circuit in *Pet Quarters* held that state law claims against SEC-registered clearing agencies for maintaining a program under rules approved by the SEC (which allowed some naked short selling to occur) were all conflict preempted. Although ostensibly recognizing the rule that preemption does not usually give rise to federal-question jurisdiction, the Eighth Circuit held that the *Grable* test was satisfied as the complaint "presents a substantial federal question because it directly implicates actions taken by the Commission . . . ." 559 F.3d at 779. Although Defendants argue that the identity of the defendant is not relevant to the *Grable* inquiry, were we to expand the Eighth Circuit's holding in *Pet Quarters* to all private defendants anytime a plaintiff's claim was uncomfortably juxtaposed with federal regulations,

18

Defendants do not purport to cite a single case regarding § 1331 (other than *Grable* and *Gunn*) in support of their contention that a question of federal law is necessarily raised here. Nonetheless, defendants do cite *D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 101-102 (2d Cir. 2001),[5] which held that there was jurisdiction under § 1331 where a court was "require[d] . . . to construe federal securities laws," because the plaintiff alleged that the New York Stock Exchange "failed to perform its statutory duty, *created under federal law*, to enforce its members' compliance with those laws." The instant case is distinguishable as Plaintiffs' claims could rise or fall entirely based on the construction of state law.

We conclude that § 1331 does not provide a basis to exercise jurisdiction over Plaintiffs' claims.

**B.**

---

preemption-like arguments would always create federal-question jurisdiction.
[5] Defendants contend *D'Alessio* supports jurisdiction under § 27. But it was plainly decided under § 1331, *id.* at 101, and § 27 was only mentioned in the context of what is now prong three of *Grable* (substantiality) after the necessarily raised issue was resolved. 258 F.3d at 104.

Having concluded that there is no arising under jurisdiction here pursuant to § 1331, we must decide whether the exclusive jurisdiction provision in § 27 of the Exchange Act might nonetheless provide a more expansive basis for federal-question jurisdiction. Although Defendants, in advancing this argument, contend that "every circuit court has reached the same conclusion," Appellees' Br. 2, the issue has actually split the two circuits that have most directly addressed it. *Compare Barbara v. N. Y. Stock Exch., Inc.*, 99 F.3d 49, 55 (2d Cir. 1996) ("Our determination that [plaintiff]'s state court complaint did not 'arise under' federal law within the meaning of section 1331 effectively resolves our inquiry under section 27 of the Exchange Act as well. . . .  We think that [section 27] plainly refers to claims created by the Act or by rules promulgated thereunder, but not to claims created by state law.")[6] *with Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 841 (9th Cir. 2004)[7] ("*Sparta* [*Surgical Corp. v. National Association of Securities Dealers*, 159 F.3d 1209 (9th Cir. 1998)] establishes, however, that the exclusive jurisdiction

---

[6] *See also Marel v. LKS Acquisitions, Inc*., 585 F.3d 279, 280-81 (6th Cir. 2009) ("As the controversy in this case . . . was one to enforce a state law claim, this grant of exclusive jurisdiction [in § 27] does not apply.  *See Barbara*.").

[7] *Opinion amended on other grounds on denial of rehearing*, 387 F.3d 966 (9th Cir. 2004).

20

provision takes the case outside of the rule . . . which otherwise might bar the action if the only jurisdictional provision implicated were [section] 1331. . . . [In *Sparta*] there would have been no jurisdiction predicated solely on [section] 1331. Yet the claim lay 'not under [section] 1331, but under [section 27].'") (internal citations omitted).  The Second Circuit recently acknowledged this split in *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, No. 13-2657, 2014 WL 5486457, at \*17 (2d Cir. Oct. 31, 2014).[8]

We believe the Supreme Court all but answered this question in *Pan American Petroleum Corp. v. Superior Court of Delaware In & For New Castle County*, 366 U.S. 656 (1961).  There, the Supreme Court considered an exclusive jurisdiction provision

_____

[8] In an "odd[] . . . discuss[ion]," *id.* at \*33 (Straub, J. dissenting), on substantially different facts than at issue here, the Second Circuit considered *Sparta* and similar decisions relevant to its analysis of the fourth prong of *Grable* (whether exercising jurisdiction under § 1331 would upset the federal-state balance of judicial responsibilities).  Specifically, that court declared that exercising jurisdiction under § 1331 would not upset the federal-state balance given that jurisdiction could be exercised in other circuits under § 27, even though it acknowledged that its own decision in *Barbara* "declined to adopt such a broad reading of [§ 27]"—a decision it was not revisiting.  *Id.* at \*17.

21

substantially identical to § 27 of the Exchange Act: § 22 of the Natural Gas Act. *Cf. Tafflin v. Levitt*, 493 U.S. 455, 471 (1990) (noting similarities in the specific language used in § 22 of the Natural Gas Act and § 27 of the Exchange Act, in contrast to other "governing statutes" "[i]n the standard fields of exclusive federal jurisdiction"). "[In § 22 of the Natural Gas Act, 'e]xclusive jurisdiction' is given the federal courts but it is 'exclusive' only for suits that may be brought in the federal courts. Exclusiveness is a consequence of having jurisdiction, not the generator of jurisdiction because of which state courts are excluded." *Pan Am.*, 366 U.S at 664. We see no reason to treat the two provisions differently.

Accordingly, we disagree with the line of Ninth Circuit cases which have held that there can be jurisdiction under § 27 (and other exclusive jurisdiction provisions) even when there is not under § 1331.[9] We note that the Ninth Circuit in its seminal decision in *Sparta* did not consider the Supreme Court's holding in *Pan American*. The incongruity between *Sparta* and *Pan*

_____

[9] *Hawkins v. National Ass'n of Securities Dealers Inc.*, 149 F.3d 330, 331-32 (5th Cir. 1998) (per curiam), although not as explicit as *Sparta* and *Dynegy*, could be read as holding that § 27 can provide subject-matter jurisdiction independently of § 1331. To the extent *Hawkins* so holds, we disagree with it.

22

*American* was brought squarely before the Ninth Circuit in *Dynegy*.  At issue in *Dynegy* was the import of § 317 of the Federal Power Act—an exclusive jurisdiction provision substantially identical to both § 27 (which was at issue in *Sparta*) and § 22 (which was at issue in *Pan American*).   Although the Ninth Circuit, in a footnote, acknowledged that *Pan American* made clear that such provisions were not "'generator[s] of jurisdiction,'" it nonetheless "fe[lt] bound . . . by *Sparta*'s subsequent interpretation."[10]  *Dynegy*, 375 F.3d at 843, n.10.  We are

---

[10]  Although the Ninth Circuit acknowledged in that footnote that the Supreme Court's holding in *Pan American* actually meant something relevant, the text of its opinion belies that admission:  "The *Pan American* court's holding is unremarkable insofar as it held that cases falling *outside* the scope of the exclusive jurisdiction provision are not subject to it."  *Dynegy*, 375 F.3d 831 at 843.  In reality, *Pan American* stands for the proposition that cases otherwise falling outside the scope of the district courts' *original jurisdiction* are not brought within it by virtue of an exclusive jurisdiction provision.  *See In re W. States Wholesale Natural Gas Antitrust Litig.*, 346 F. Supp. 2d 1123, 1130 (D. Nev. 2004).  Such is the doctrinal disarray created by *Dynegy* and *Sparta,* that a district court "reluctant[ly] . . . conclu[ded]" that it could not follow the Supreme Court's holding in *Pan American* even with respect to § 22 of the Natural Gas Act—the very provision at issue in *Pan American.  See*

23

not confronted with such a problem, as this Court has faithfully applied *Pan American* to other exclusive jurisdiction provisions. *See Exxon Corp. v. Hunt*, 683 F.2d 69, 74 (3d Cir. 1982) (applying *Pan American* to § 113(b) of the Comprehensive Environmental Response, Compensation and Liability Act).

Although it does not appear that any court has expressly relied on *Pan American* to hold that § 27 does not authorize a departure from the *Grable* line of cases, courts have cited *Pan American* in holding that § 27 does not depart from § 1331 in other ways. *See Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co.*, 600 F.2d 1228, 1231 (7th Cir. 1979) (§ 27 does not prevent state courts from hearing Exchange Act defenses); *Gold v. Blinder, Robinson & Co.*, 580 F. Supp. 50, 54 (S.D.N.Y. 1984) (§ 27 "does not bar a plaintiff from pursuing at its option cognate remedies based entirely upon state law"); *McMahon Chevrolet, Inc. v. Davis*, 392 F. Supp. 322, 324-25 (S.D. Tex. 1975) ("This Court is of the opinion that the exclusive jurisdiction of the federal courts under [§ 27] is like the exclusive jurisdiction of the federal courts under . . . the Natural Gas Act . . . in that such

---

*Pacificorp v. Nw. Pipeline GP*, No. 10–99, 2010 WL 3199950, at *6 n.3 (D. Or. June 23, 2010) *report and recommendation adopted*, 2010 WL 3219533 (Aug. 9, 2010).

24

jurisdiction does not bar a plaintiff from pursuing at his option remedies based solely on state law. *Pan Am*.").

We agree with the Second Circuit's holding in *Barbara* that § 27 is coextensive with § 1331 for purposes of establishing subject-matter jurisdiction—the exclusive jurisdiction provision merely serves to divest state courts of jurisdiction.[11]  Accordingly, § 27 does not provide an independent basis to exercise jurisdiction over Plaintiffs' claims.

## IV.

Having concluded that federal-question jurisdiction is lacking, we will reverse the District Court's March 20, 2013 order, and remand with instructions that the District Court remand this case to the Superior Court of New Jersey.

---

[11] The District of New Jersey already reached this conclusion in a prior short selling case by relying on *Barbara*. *Fairfax*, 2007 WL 1456204, at *5.